IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT COURT
GREENVILLE DIVISION

TAWANA FRIEND                                                                                    PLAINTIFF

V.                                                              CIVIL ACTION NO: 4:19-CV-18-SA-JMV

CITY OF GREENWOOD, MISSISSIPPI et al                                                      DEFENDANTS

ORDER AND MEMORANDUM OPINION

Tawana Friend filed her Complaint [2] on November 1, 2018, alleging race and gender discrimination claims against the City of Greenwood, its Mayor and Chief of Police, and members of the City Council in their official capacities. The Defendants filed a Motion for Summary Judgment [57] seeking a summary dismissal of Friend's claims against them. The issues are fully briefed and ripe for review.

*Factual and Procedural Background*

Tawana Friend, an African American female, was hired by the Greenwood Police Department in May of 2013. She initially worked as a patrol officer and was eventually assigned to the SWAT team in 2014. Two years later, the Department transferred Friend to the juvenile division.

On October 27, 2016, Friend responded to a call involving an 11-year-old child who was allegedly causing a disturbance in the community. After arriving at the scene, Friend investigated the incident and eventually arrested the juvenile. She transported the juvenile to the police annex near the department headquarters. There, Friend allegedly retrieved a belt and whipped the child at the request of the child's grandmother. When Chief Ray Moore learned of the incident, he placed Friend on suspension with pay until the completion of an internal affairs investigation. After investigating the matter, the Department concluded that Friend violated the Department's policies

and procedures. The Department held an administrative hearing on December 27, 2016 to discuss the violations with Friend and give her an opportunity to be heard prior to any disciplinary actions being taken against her. Friend was temporarily suspended without pay, placed on a one-year probationary period, and transferred back to the patrol division.

While her probation prohibited her from working on the SWAT team, the Chief allowed Friend to continue training with the SWAT team. During that time, Commander Byron Granderson was leading the team. Friend became romantically involved with Granderson despite the Department's policy prohibiting romantic relationships between supervisors and subordinates. Faced with push back, Friend stopped training with the SWAT team and remained in a relationship with Granderson.

Throughout her career with the Department, Friend was denied two promotions. She first took the promotion exam, which is required for all candidates, in 2015 and passed. However, after applying for a promotion to become a sergeant, Friend was not promoted because she did not have the requisite three years of experience with the Department. Friend admitted in her deposition that she was not qualified but believed she deserved the promotion because she was more qualified than male officers who were promoted. The second time she applied for a promotion, Friend still did not have the requisite three years of experience as a full-time patrol officer. After she took the exam, the Chief suddenly stopped the promotion process due to complaints that unqualified individuals were applying and being promoted. Friend was not pleased with the Department's promotion process. Friend testified that if she was not qualified, the Chief should not have allowed her to take the test. Chief Moore testified that he allowed Friend to take the exam for the experience and to prepare her for when she is qualified for the promotion.

In July of 2017, Friend and two other officers complained to Mayor Carolyn McAdams about the Chief's management of the Department and the promotion process. According to the Mayor, Friend did not mention discrimination during the meeting, but Friend recalls that she discussed with the Mayor the Department's disparate treatment of African American officers.

On October 23, 2017, the Department received a complaint regarding an alleged off-duty incident involving Friend, her sister, and her sister's ex-boyfriend. The complaint alleged that on October 22, 2017, Friend left her house and rode around searching for her sister and her sister's ex-boyfriend. According to the complaint, she found them in a heated argument. Friend proceeded to approach the couple with her personal weapon drawn. Friend testified in her deposition that she was not carrying her police weapon.

On October 25, 2017, the Department conducted an internal affairs investigation, through which it was determined that Friend violated Department and City policies and procedures. A pre-termination hearing was held on January 22, 2018, and Friend was terminated a day later.

After her termination, Friend filed an EEOC Charge with the Equal Employment Opportunity Commission ("the Commission") on March 7, 2018, alleging that she was denied a promotion on two separate occasions because of her race and sex. She also claimed that she was terminated in retaliation to the complaints she filed against the Chief and the Department. After receiving a Right to Sue letter from the Commission, Friend file a her Complaint [2] on November 1, 2018, in the Leflore County Circuit Court against the City of Greenwood, Mississippi, Mayor Carolyn McAdams, Chief of Police Ray Moore, and members of the Greenwood City Council in their official capacities. In addition to the discrimination and retaliation claims, the Plaintiff alleges conspiracy claims under 42 U.S.C. §§ 1985 and 1986 in addition to a state law wrongful discharge claim. The Defendants removed the case to this Court on January 28, 2019. *See* Notice of Removal

3

[1]. Presently before the Court is the Defendants' Motion for Summary Judgment [57] seeking dismissal of Friend's claims.

*Legal Standard*

Summary Judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*[1]

In her Complaint [2], the Plaintiff alleges that the Defendants violated Title VII of the Civil Rights Act of 1964, Sections 1981, 1985, 1986, and the *McArn* state statute when she was allegedly denied a promotion because of her race and sex. She also claims that she was retaliated against after she was reinstated.

I.  *Title VII and Section 1981 Claims*

First, the Defendants argue that the Plaintiff's sex and race discrimination claims should be procedurally barred because the allegations made in her deposition testimony expand her claims beyond the factual basis included in her EEOC charge.

The Court's consideration of this issue "must begin with [a] conviction that procedural technicalities are not to stand in the way of Title VII complaints." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970). To do so would "falsify the Act's hopes and ambitions." *See id*. At the outset, the Court acknowledges that "the scheme of redress for employment discrimination under Title VII of the Civil Rights Act of 1964 requires a complainant to file a 'charge' with the Equal Employment Opportunity Commission within a certain time after the conduct alleged." *Edelman v. Lynchburg College*, 535 U.S. 106, 108, 122 S.Ct. 1145, 1147, 152 L.Ed.2d 188 (2002); 42 U.S.C. §2000e-5(e)(1). As the Supreme Court aptly clarified in *Fort Bend County, Texas v. Davis*, this requirement, although procedurally mandatory, is not jurisdictional. 139 S.Ct. 1843, 204 L. Ed. 2d 116 (2019). The Fifth Circuit stated in *Sanchez* that "in analyzing

---

[1] Before proceeding to its analysis, the Court feels compelled to note the quality of briefing submitted in this case. In response to the Defendants' Motion for Summary Judgment, the Plaintiff filed a 28-page response. This response included a 26-page recitation of facts, and a three-paragraph legal analysis which cites to only one case and fails to refute many of the Defendants' arguments in their brief. The Court cannot assume arguments on behalf of the Plaintiff because "the Court is under no 'duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010) (citation and quotation marks omitted); *see also* FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials."). Instead, the Court will consider, to the extent that it can, the Plaintiff's factual assertions in her brief and the Defendants' brief and exhibits.

[a claim of discrimination], we begin with the obvious proposition that the crucial element of a charge of discrimination is the factual statement contained therein. Everything else entered on the form is, in essence, a mere amplification of the factual allegations." 431 F.2d 455, 462 (5th Cir. 1970). The Fifth Circuit also held that "the scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990); *citing Sanchez*, 431 F.2d at 466.

In her EEOC charge, Friend outlined her claims of discrimination and her belief that African American officers were being passed over for promotions because of their race. She wrote "I believe I am being discriminated against because of my race and sex, black female and retaliation in violation of Title VII." *See EEOC Charge* [57-17]. Most, if not all, of the factual basis is a timeline of when she filed grievances and when she objected to the alleged discrimination. She included facts of her verbal complaints to the Mayor and Regina Rick about her concerns with the Department's failure to promote African American officers. Other than the timeline, Friend's EEOC charge is void of facts surrounding the alleged sexual harassment with the exception of one line—"the Chief would stare at me." [57-17].

Based on the guiding principles discussed above, the Plaintiff's failure to include a more detailed factual basis does not administratively or procedurally bar her claims. However, because the information contained within the EEOC Charge establishes the scope of litigation, the Court limits its analysis to the facts in the Charge and the corresponding testimony in the Plaintiff's deposition.

6

*A. Race Discrimination*

The Defendants contend that even if the Court finds the Plaintiff exhausted her administrative remedies, she still cannot make out a *prima facie* case of discrimination or retaliation under Title VII and Section 1981.[2] At the forefront of the Plaintiff's claims is her allegation that she was denied a promotion twice because of her race. The Plaintiff must therefore establish a *prima facie* case tending to show that the Defendants' failure to promote her was because of her race. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L. Ed. 2d 207 (1981). To do that, she " . . . must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Id* at 254. "The burden of establishing a *prima facie* case of disparate treatment is not onerous." *Id*. Specific to race discrimination claims, the Court in *McDonnell Douglas Corporation v. Green* held that a plaintiff must show

> (i) that she belongs to a racial minority; (ii) that she applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite her qualifications, she was rejected; and (iv) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications

411 U.S. 792, 802, 93 S.Ct. 1089, 1824, 67 L. Ed. 2d 207 (1981).

Here, it is undisputed that Friend, an African American female, is a member of a protected class. The Defendants argue that Friend cannot establish that she was qualified for the promotion. According to Chief Moore's deposition testimony, an officer must possess a minimum of three years of experience as a full-time officer to qualify for a promotion. *See* Chief Moore's Deposition

---

[2] "The elements of the claims under Title VII and 42 U.S.C § 1981 are identical." *Casarez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 337 n. 3 (5th Cir. 1999). Therefore, the Court will analyze Friend's Title VII and Section 1981 claims together.

7

[57-3]. Friend admitted that she was not qualified at the time that she was denied a promotion on both occasions. *See* Plaintiff's Deposition [57-1]. Friend testified that if she was not qualified, the Department should not have allowed her to take the promotion exam. Chief Moore testified, however, that because he saw a bright future for Friend, he wanted her to take the exam so she could be prepared for the process when she became qualified. *See* Chief Moore's Deposition [57-3]. Notwithstanding Chief Moore's intentions, Friend, by her own admission, did not possess the required three years of experience and was not qualified for a promotion. Thus, even viewing the evidence in the light most favorable to her, the Plaintiff cannot establish a *prima facie* case of race discrimination pursuant to Title VII or Section 1981.

    *B. Sex Discrimination/Hostile Work Environment*

In addition to a claim of race discrimination, the Plaintiff claims that she was subjected to a hostile work environment because of her gender. "A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment.'" *Stewart v. Mississippi Transp. Com'n.*, 586 F.3d 321, 328 (5th Cir. 2009); *citing National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 2074, 153 L. Ed. 2d 106 (2002). To succeed on a hostile-work-environment claim,

> a plaintiff must show "five elements: (1) the plaintiff belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.

*Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir. 1986).

Here, there is no dispute that Friend is a member of a protected class, as addressed above. As to unwelcomed sexual harassment, Friend claims that she was sexually harassed by Chief

8

Moore. According to Friend, "there were times when Chief Moore would just stare at [her] when she came to the office wearing street clothes. He would be staring in the direction of her rear end." *See* Plaintiff's Response [70]. She added that on one occasion while walking to the office with a dress on, the Chief stopped in front of her and stared at her. Friend claims that the other officers replied that the Chief was watching her behind. Thus, viewing the facts in the light most favorable to the Plaintiff, the Court finds that the Plaintiff satisfied this factor.

Next, the harassment complained of must be based on sex. There is no indication that Friend complained of such harassment to anyone within the department or the Mayor. All of the grievances submitted by Friend related to the Department's alleged failure to promote African American officers. In addition, Friend did not allege that the purported sexual harassment was based on her sex but viewing the facts in the light most favorable to her, the Court can infer that Chief Moore was allegedly staring at her body because she was female.

The Plaintiff must also show that it affected the terms, conditions, or privilege of her employment. "To affect a term, condition, or privilege of employment, 'sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive environment.'" *Stewart v. Mississippi Transp. Com'n.*, 586 F.3d 321, 328 (5th Cir. 2009); *citing National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 2074, 153 L. Ed. 2d 106 (2002). "To determine whether conduct is severe or pervasive, we will look to the totality of the circumstances." *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007). "Relevant factors include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Harvill v. Westward Communications, LLC*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris v. Forklift*

9

*Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L. Ed. 2d 295 (1993)). Finally, the conduct must be both "objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).[3]

As to the relevant factors outlined in *Harvill*, Friend does not indicate the frequency of Chief Moore's alleged conduct. She testified about two occasions when she saw him looking at her in an inappropriate way. These infrequent encounters, although subjectively offensive to Friend, do not appear to rise to the level of severity needed for a cognizable sexual harassment claim compared to other cases where the Fifth Circuit found that the conduct was insufficient to establish sexual harassment. *See Gibson v. Potter*, 264 Fed. Appx. 397, 400 (5th Cir. 2008) (stating "the determination of whether alleged conduct is sufficiently severe or pervasive is not an exact science, but this court's [the Fifth Circuit] decisions on this issue provide guidance."). For example, in *Paul v. Northrop Grumman Ship Systems*, the Fifth Circuit held that a single incident of physical touching of an employee's breast, hips and buttocks with his chest and pelvic region was not severe or pervasive to constitute sexual harassment. 309 Fed. Appx. 825 (5th Cir. 2009). The Court reasoned that "while an isolated incident—reflecting conduct that is not pervasive or frequent—may be sufficiently severe to constitute sexual harassment, it must be extremely serious in order to amount to discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L. Ed. 2d 662 (1998)).

---

[3] Before addressing severity or pervasiveness, it is important to note the seriousness of sexual harassment claims and the unfortunate consequence that such conduct has on employees. Under the current framework, litigants are required to assert the various incidents which they believe were ones of abominable harassment, and watch courts compare such conduct to others and render their experiences either severe or not severe enough. Because of consequences of this reality, this Court does not doubt the subjective beliefs or experiences of the Plaintiff in this case. The Court is only concerned with whether the conduct she alleges is objectively offensive, as Fifth Circuit precedent demands.

The Court has not located, and the Plaintiff has not cited, any cases where the alleged conduct solely included incidents of the alleged harasser staring at the victim's body. While not factually identical, cases where the alleged harasser makes offensive comments towards the plaintiff provide some guidance. Even in cases where there is no physical touching and only words, the Fifth Circuit found that "mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently effect the conditions of employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 F. Ed. 2d 295 (1993) (citations omitted). Similarly, in *Hockman v. Westward Communications, LLC.*, the Fifth Circuit found that even remarks about the employee's body, grabbings and brushings against Hockman's breasts or behind, and attempts to kiss her were not severe enough to constitute sexual harassment. 407 F.3d 317, 328 (5th Cir. 2004). Thus, conduct more severe than the alleged conduct here was found insufficient to establish a cognizable claim of sexual harassment.

Viewing the evidence in her favor, Friend was subjectively offended by the alleged conduct. But, as the Fifth Circuit instructed in *Shepherd*, the Court is to apply both an objective and subjective standard. *See Shepherd*, 168 F.3d at 874. Objectively speaking, the alleged conduct appears less severe than conduct that the Fifth Circuit has deemed insufficient to establish a sex discrimination claim. Thus, the Plaintiff fails to establish a cognizable claim of sexual harassment.

*C. Retaliation*

In addition to the race and sex discrimination claims, Friend alleges that her termination was an unlawful retaliation in response to the complaints and grievances she made against the Department. The Defendants argue that Friend cannot establish a *prima facie* case of retaliation and otherwise cannot establish pretext.

11

"Title VII's antiretaliation provision forbids employer actions that discriminated against an employee because she has opposed a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S.Ct. 2405, 2410, 165 L. Ed. 2d 345 (2006) (internal quotations omitted); 42 U.S.C. § 2000e-3(a).

"To establish a *prima facie* case of retaliation, the plaintiff must establish that: (1) [s]he participated in an activity protected by Title VII; (2) her employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (citations omitted). "If the Plaintiff makes a *prima facie* showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *Id.* (*citing Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). "The plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the reason discriminatory or retaliatory purpose." *Id.*

Friend's retaliation claim, much like the others, was not supported by legal argument in her Response [61] to the Defendants' Motion for Summary Judgment [57]. As discussed above, the plaintiff's three-paragraph legal analysis covers only the elements of her race discrimination claim and briefly mentions her Sections 1985 and 1986 claims. Because the Plaintiff abandoned her claim and conceded the Defendants' arguments, the Court finds that the Plaintiff's failure to respond is a waiver. *See United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (holding that failure to adequately brief an argument results in a waiver). Thus, the Plaintiff's retaliation claim fails.

*II.    Sections 1985 and 1986 Claims*

In her Complaint [2], Friend alleged that Defendants McAdams and Moore, while acting under color of law, conspired to deprive Friend of a right secured under the Fourteenth Amendment, Section 1983, and other relevant statutes. In particular, she argues that the Mayor and Police Chief conspired to prevent her from getting a promotion by disregarding the rules and regulations governing promotions within the Department and ignoring Friend's constant complaints about being mistreated and discriminated against.

"To state a cognizable claim under § 1985(3), a plaintiff must allege that (1) a racial or class-based discriminatory animus lay behind the conspiracy and (2) the conspiracy aimed to violate rights protected against private infringement." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001); *citing Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). In the Fifth Circuit,

> . . . a § 1985(3) claim must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus.

*Wong v. Stripling*, 881 F.2d 200, 202–03 (5th Cir. 1989).

The Plaintiff does not attempt to meet these elements in her briefing. Out of 28 pages, the Plaintiff devoted two sentences to her Section 1985 claim. These two sentences are conclusory allegations of a conspiracy, unsupported by sufficient facts and citations to the record before the Court. Thus, because "the Court is under no 'duty to sift through the record in search of evidence to support a party's opposition to summary judgment," the Court finds that the Plaintiff cannot

13

establish a Section 1985 claim. *See Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379–80 (5th Cir. 2010).

In similar fashion, the Plaintiff alleges that the defendants violated Section 1986 because "the mayor clearly had the power and authority to require the police chief to comply with rules and regulations governing promotions." The Plaintiff devoted one sentence to her Section 1986 claim in her brief and does not make any legal arguments as to why her claim should survive summary judgment. As such, the Court finds as it did above that she has not established a cognizable Section 1986 claim and the Defendants are entitled to summary judgment. *See United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (holding that failure to adequately brief an argument results in a waiver).

### III. *Unlawful Discharge*

In addition to her federal claims, the Plaintiff asserted a state law wrongful discharge claim against the Defendants. She alleges that she was unlawfully harassed and constructively discharged because she reported unlawful activity that was taking place in the department. The Defendants, however, argue that her state law claim fails because she did not file a timely notice of claim under the Mississippi Tort Claims Act (MTCA) and alternatively, the City is immune from this claim under the discretionary function exemption of the MTCA.

"Mississippi has adhered to the employment at will doctrine since 1858." *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088 (Miss. 1987). Under this common law rule, the employment contract between employer and employee may be terminated by either party with or without justification. *HeartSouth, PLLC v. Boyd*, 865 So.2d 1095, 1108 (Miss. 2003) (citation omitted). The Mississippi Supreme Court carved out a public policy exception to this general rule. *McArn v. Allied Bruce–Terminix Co.*, Inc., 626 So.2d 603 (Miss. 1993). The Court held that "an employee

who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." *McArn*, 626 So.2d at 607.

In order for this exception to apply, the plaintiff must have reported an illegal act. *See id*. The Mississippi Supreme Court has not defined "illegal act" and has not articulated either way whether "illegal" relates to criminal conduct or whether it applies to civil issues. Nonetheless, the Court looks to the alleged illegal conduct in this case. The purported illegal act here would be the alleged discrimination in the promotion process that Friend complained about to the Department and the Mayor. Friend claims that she was wrongly terminated when she complained of this alleged illegal conduct. While Mississippi state courts have not created a test or set of factors needed to prove a wrongful discharge claim, the obvious evidentiary hurdle is whether the employee reported an illegal act. Stated differently, the Court must determine whether Friend reported an illegal act.

As the Court previously found, there were no genuine disputes of material fact as to whether the Department discriminated against Friend when it denied her two promotions. By this, the Court concluded that the Plaintiff did not have sufficient evidence to establish an inference of discriminatory conduct by the Defendants. Thus, no illegal act.

Without sufficient proof of illegal conduct, such as actual discriminatory employment practices, Friend cannot establish a viable wrongful discharge claim under state law.

*Conclusion*

For all the reasons discussed above, the Defendants' Motion for Summary Judgment [57] is GRANTED. The Plaintiff's claims against all defendants are DISMISSED *with prejudice*. THIS CASE IS CLOSED.

SO ORDERED this, the 5th day of May, 2020.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE